BENNETT HARRISON v. WILLIAM G. OAKMAN IMPLEADED WITH HENRY PEASHEWAY AND ALEX. C. McCRARY.

*Cloud on title—Complainant's title—Notarial certificate.*

1. A bill to remove a cloud from title was dismissed when it did not appear that complainant held a valid title; as when he held under Indian grantors one of whom was under age and did not understand that she was conveying title and the other had none to convey.

2. A notary's certificate of acknowledgment is of little force when the person purporting to make the acknowledgment does not understand English and the notary has not explained the effect of the act in such person's own language and seen to it himself that it was understood.

Appeal from Van Buren. (Mills, J.) April 10.—April 15.

BILL to clear title. Defendant Oakman appeals. Reversed.

*Benj. F. Heckert* for complainant.

*Norton & Keat, O. N. Hilton* and *G. W. Lawton* for defendant appellant.

CAMPBELL, J. Complainant filed his bill, as owner of lands in Van Buren county, to set aside an alleged cloud upon his

title arising from a deed and mortgage purporting to have been made by his grantor before he purchased, but which as he claims were executed by another person who appeared before the acknowledging officer and falsely assumed the character of the alleged grantor. He does not allege possession, but he sufficiently proved it on the hearing so that it does not appear that he could try titles at law.

The land in question belonged to an Indian named Joseph Manqua, and the bill avers title to complainant directly from Martha Manqua, and indirectly from Mary Bevins, formerly Mary Manqua, averred to be the only heirs of Joseph. It is averred and the proofs seem to leave no serious doubt on the subject that Henry Peasheway, in January, 1877, took an Indian woman before James Curtis, a justice of the peace of Hartford in said county, and there procured her to execute and acknowledge a power of attorney in the name of Martha Manqua to Peasheway, under which he mortgaged the land in question to defendant McCrary, and conveyed the fee to defendant Oakman. The justice, being examined as a witness, identified Mary Bertrand, an Indian relative of Martha Manqua, living in Indiana as the woman who personated Martha, and she testified to having been deceived by Peasheway into supposing she was signing a paper of her own to enable her to obtain some property belonging to a deceased aunt. Mary Bertrand was examined through an interpreter, and the justice probably had no means of conferring with her except through Peasheway. The court below granted complainant relief by setting aside McCrary's mortgage and Oakman's deed. McCrary does not appeal. Oakman is the only one who complains of the decree. His defense rests not only on his own title, but on the failure of complainant to make out his case.

The averment that Mary Bevins is a daughter and heir of Joseph Manqua is not sustained. Martha Manqua says they had different parents; and Jackson Manqua, Joseph's brother, says his mother brought her up and that her mother was not Joseph's wife, and that Mary was taken care of among the neighbors at different places. She is sworn also to be an old

woman, while Martha is a young woman. The descent of Mary Bevins seems to be from some other father ; or at least, there is nothing satisfactory pointing to Joseph, and her heirship from him is clearly negatived.

This reduces his claim to his title from Martha, and as her deed is full and conveys all her interest, and as she seems to be Joseph's sole heir, it gave complainant a title if genuine and competent. But we think the testimony is not sufficient to make out a clear case in his behalf.

The exact age of Martha does not appear, but there are facts showing it, very nearly. Moses Hawley was her guardian, appointed in 1877, and says she became of age in 1878. He moved onto his land, near where Martha was born, in the spring of 1857. His own wife had a child in 1857, and was sent for and present at Martha's birth the same year. This renders it certain that Martha was not born earlier than the spring of 1857. The deed which complainant says was made by Martha to him, was made in January, 1878, when, if Hawley is correct, she was yet a minor, and as nothing has been done to ratify it, and she denies having executed it, the deed is not made out as effectual to bind her. But as these dates concerning her age may possibly be erroneous, it may be proper to look into this deed itself. It does not purport to be made by Martha Manqua, but by Mattalena Memqua, and is not signed, but is attested by her mark. It purports to be acknowledged before William A. Willis, a notary of Ottawa county, where complainant is described as residing, and was witnessed by Willis and by Robert C. Davidson.

The deed was proved by a transcript from the record, which was objected to as not purporting to show any act of Martha Manqua. In order to identify her as the grantor she was called as a witness and positively denied having had any land dealings with complainant, and denied selling her land to anybody. She admitted going before Willis once with Harrison, but says she does not know for what purpose, and does not identify the time. She denied receiving any mortgage in payment from Harrison, or having any dealings about it, and denied she was ever known by the name of Mattalena.

Harrison is the only witness who undertook to prove the conveyance. He was sworn without producing the original deed. He swore that she signed the deed, and that he gave her a $500 mortgage on lands in Ottawa. He gave no explanation or testimony concerning the making of the bargain, or any of the circumstances of the transaction or how the name was got at. His testimony was confined to the bare allegations of execution and the giving of the mortgage back. He says who were present, but does not mention the subscribing witness. The original deed was afterwards put in but without any proof except such as was furnished by the acknowledgment, which does not name Martha Manqua, but Mattalena Memqua.

When Martha Manqua was examined in the court below she was examined as complainant's witness, and was sworn and answered through an Indian interpreter. It is not at all likely that she could understand or make others understand her in English. Under these circumstances, and especially after her positive denial of the transaction, and in view of the apparent difference in name, the proof of the original deed and of the circumstances attending it was necessary, and whether or not it was absolutely necessary in law to produce the subscribing witness, we do not think it would be proper for a court of equity to act on any but clear proof that she executed the deed, and did so understandingly. A notary's certificate, where the person purporting to be grantor does not understand English, is of very small account and as no one swears Martha was ever known by the name under which the notary certifies he knew the person acknowledging, the evidence of identity is rather contradicted than affirmed by his certificate. It was held in *Dewey v. Campau* 4 Mich. 565, that a notary cannot take an acknowledgment through an interpreter, and in the absence of proof that this deed was fully explained to Martha in her own language, and that the notary understood Indian and conversed with her in it, his action cannot be credited. *Fisher v. Meister* 24 Mich. 447.

We think the testimony as it stands not only shows the

deed void by reason of the minority of the grantor, but fails to show any execution by her intelligently at all.

The decree should be reversed, and the bill dismissed as against appellant, with costs of both courts.

The other Justices concurred.